Mutual Life Ins. Co. of New York *v.* B. F. Cameron.

[56 South. 782.]

1. Insurance. *Distribution policies. Endowment policies. Reserve. Rights of policy-holders.*

Section 2 of the laws of the state of New York 1879, chapter 347, has no application to any but "endowment" policies and does not apply to twenty-year distribution policies.

2. Insurance. *Distribution policies. Rights of policy-holders.*

The surrender clause of a twenty-year distribution policy in the Mutual Life Insurance Company of New York, provided that the policy must be surrendered at the end of twenty years or at any subsequent quinquennial period, and the reserve might be withdrawn and that no cash value would be paid for surrender at any other time. It was provided in another clause that only policies in force at the end of the twenty-year term should share in the surplus and that no distribution should be made at any previous time. The policy further stated that if the policy should become void for non-payment of premiums all payments previously made should be forfeited to the company. The policy lapsed for the non-payment of the sixth annual premium and no application was made for a paid up policy within the six months required by the policy. *Held,* in a suit by the insured after the end of the twenty-year period, that he was not entitled to maintain a suit for a distributive share of the surplus or reserve.

Appeal from the circuit court of Lauderdale county.

Hon. Jno. L. Buckley, Judge.

Suit by B. F. Cameron against the Mutual Life Insurance Company of New York. From a judgment for plaintiff, defendant appeals.

The appellee was the plaintiff in the court below, and the appellant was defendant. This suit was begun in 1910, and is for the recovery of one hundred ninety-eight dollars and eighty-seven cents, alleged to be due plaintiff as the reserve on a policy of life insurance issued to

him by the defendant company in the year 1888, and on which plaintiff has paid five annual premiums. The policy lapsed in 1893 for non-payment of the sixth annual premium. Subsequently plaintiff demanded of defendant the issuance of a paid-up policy, which was declined, because the application for same was not made within six months after the policy had lapsed, as provided by the terms of the policy.

Plaintiff contended that under the surrender clause of the policy (set out in the opinion) that he was not entitled to demand payment of this reserve alleged to be due him until after twenty years from the date of the policy (which would have matured in twenty years had all premiums been paid), and that after the expiration of the full twenty-year period he was entitled to his full pro rata part of the reserve on his policy, as though he had paid all premiums to maturity. The defendant contends that, since plaintiff did not receive, and was not entitled to, a paid-up policy, but permitted his policy to lapse that at the end of the twenty-year period he had no policy in force, and was not entitled to participate in the reserve provided for in the surrender clause, and that any claim which he might have had was long since barred by limitation. On trial, after all the evidence was in, the defendant asked for a peremptory instruction, which was refused. The case went to the jury, and resulted in a verdict for plaintiff, from which defendant appeals.

Chapter 347, Laws of New York of 1879, contains the following provision: "Sec. 2. If the reserve upon any endowment policy applied according to the preceding section as a single premium of temporary insurance, be more than sufficient to continue the insurance to the end of the endowment term named in the policy and if the insured survived that term, the excess shall be paid in cash at the end of such term, on the conditions on which the original policy was issued."

*A. S. Bozeman* and *McWillie & Thompson,* for appellant.

It will be seen from plaintiff's statement of his cause of action and his testimony that his pretended right of action is predicated on the provision of the policy (endorsed on its back) entitled "Surrender," which is in these words: "Surrender. This policy may be surrendered to the company at the end of said twenty years from the date of issue and the full reserve (computed by the American Table of Mortality and four per cent interest) and the surplus as defined above, will be paid therefor in cash. If surrendered at the end of any subsequent quinquennial dividend period, the full reserve by the same standard and the surplus as defined will be paid in cash. No cash value will be paid for its surrender at any other time or date."

Of course, the "Surrender" terms of the policy must be read in connection with its other provisions, and at the outset, in order to understand the words "at the end of twenty years from the date of issue and the full reserve . . . and the surplus as defined above will be paid therefor in cash," we must read the preceding paragraph, entitled "Dividends." This paragraph provides that the policy-holder shall be credited with a distributive share of surplus apportioned at the end of twenty years from the date of the policy, not before then, adding in express terms "only twenty years distribution policies in force at the end of such terms, and entitled thereto, by year of issue, shall share in such distribution of the surplus and no other distribution to such policies shall be made at any previous time."

It is quite clear, since plaintiff only paid five annual premiums (as shown by the statement of his cause of action and his testimony that he never became entitled to credit for a distributive share of the surplus; his policy was forfeited in 1893, only five years after its issuance, and he was not entitled to anything under the terms of

the policy contained in the paragraph entitled "dividends." This is, we submit, too plain for discussion.

Going back to the "Surrender" paragraph, we see that provision is made for surrendering policies only at the end of twenty years from their issuance and thereafter at periods of five, ten, fifteen, twenty, etc., years, the periods being five years apart; and that it is expressly provided that "No cash value will be paid for its (the policy's) surrender at any other time or date."

The terms of the "Surrender" paragraph relate only to live policies; it has no application to mere papers or to forfeited policies which have become mere papers. The "Dividends" paragraph by express terms negatives the right of forfeited policies to participate in the surplus and its terms are referred to in the "Surrender" clause by the use of the phrase "and twenty years from the date of issue" and the words "as defined above." Surely "the surplus as defined above" is not payable upon forfeited policies under the "Surrender" clause, its distribution thereto being expressly negatived by the paragraph entitled "Dividends."

The "Surrender" clause promises to pay "reserve" and "surplus" in the same language and the promise cannot possibly apply to forfeited policies as to the "surplus" without doing violence to the "Dividends" clause, and the two must be construed together, and consequently no part of the promise can be referred to forfeited policies. And besides, provision is made in the paragraph entitled "Payment of Premiums" utterly at war with plaintiff's contention that the "Surrender" clause relates to forfeited policies. It is provided in express terms that "If this policy shall become void by non-payment of premium, all payments previously made shall be forfeited to the company except as hereinafter provided." The thereinafter provision is contained in the paragraph entitled "Paid Up Policy." The above last quoted language from the "Payment of Premium" provision is

the exact equivalent of words declaring that policies shall become void for failure to pay a premium, and is an affirmative contract that previous payments should be forfeited to the company in case of default in the payment of a succeeding premium. Clearly therefore forfeited policies are not within the "Surrender" clause. And besides the "Incontestability" clause shows that the payment of premiums was insisted upon as a *sine quo non* to liability of any kind on the policy.

*Fewell & Cameron,* for appellee.

The appellee's contention in the case at bar is simply that he is entitled to the reserve value of his policy and upon which he has paid the gross sum of four hundred fifty-six dollars and fifty cents and according to the terms of the same, he had no right to demand until after the expiration of twenty years from the date of the issuance of same, the surrender clause of the contract of insurance reading thus:

"This policy may be surrendered to the company at end of the said twenty years from the date of issue and the full reserve computed by the American Table of Mortality and four per cent interest and the surplus as defined above will be paid therefor in cash. If surrendered at the end of any subsequent quinquennial dividend period, the full reserve by the same standard and the surplus as defined will be paid in cash. No cash value will be paid for its surrender at any other time or dates."

The appellee was governed solely by the contract and its terms and had no right to reserve at any time other than was provided for by the policy, and even though the policy had continued in force the full twenty-year period from the date of the issuance of same, the appellee would have had no right to receive or demand same until after the expiration of the said twenty years as provided in the policy of insurance. The only conceivable difference

so far as the reserve of the policy is concerned, in a policy which is kept in force for twenty years and one which is kept in force for five years, is as we submit, the real amount of the reserve due. As a matter of course, the older a policy of insurance becomes by virtue of the reception of the premiums by the company, the more valuable the same is to the policy-holder, hence the larger the reserve. Reserve is the life of the policy and is a substantial part thereof, made so by the actual payment of premiums.

If appellee had kept his policy in force for twenty years instead of five years, then according to the contract he would have been entitled to the reserve, which in that event would have been just four times as much as he was entitled to receive, for keeping his policy in force only five years; then if he was entitled to receive the reserve at the expiration of twenty years on a policy which had been in force for that length of time, why shouldn't he be entitled to receive the reserve according to the policy in proportion to the number of years he actually kept his policy in force? We submit no valid reason can be given that would bar him from receiving the reserve in that event.

The contract expressly stating that the reserve would not be paid until the expiration of twenty years from the date of the issuance of the policy, the statute of limiations does not run against the case at bar, for no right of aetion accrued under the contract until after the expiration of the said twenty years. This is a matter entirely fixed by the contract between the parties. therefore the statute cannot and does not apply.

The appellee outlived the twenty-year period and therefore became entitled to receive the "reserve on his policy, by reason of the fact that when his policy lapsed and after making demand for a cash settlement, the appellant company refused to comply with the laws of the state of New York, in that, extended insurance

was not given nor tendered the appellee. He received no benefit whatsoever from his reserve and only derived the benefit of protection during the five years his policy remained in force.

The laws of the state of New York, a copy of which being attached to brief of counsel for appellant reads, thus:

"2. If the reserve upon any endowment policy applied according to the preceding section as a single premium of temporary insurance, be more than sufficient to continue the insurance to the end of the endowment term named in the policy and if the insured survived that term, the excess shall be paid in cash at the end of such term, on the conditions on which the original policy was issued."

This is section 2 of chapter 346 of an act entitled, "An act to protect the rights of policy-holders in life insurance companies," as enacted in 1879 by the legislature of the state of New York, and quoted by counsel for appellant in their brief.

We at once see that the reserve in a policy of life insurance is regarded as the property of the individual who holds the policy and he may use the same in the event of a lapse of his policy, by having it taken "as a single premium of life insurance the published rates of the company at the time the policy was issued and shall be applied as shall have been agreed in the application and policy, either to continue the insurance of the policy in force at its full amount so long as such single premium will purchase temporary insurance for the amount at the age of the insured, at the time of lapse, or to purchase upon the same life, at the same age, paid-up insurance, payable at the same time, and under the same conditions, except as to the payment of premiums as the original policy," and if the reserve upon any endowment policy be more than sufficient to continue the insurance to the end of the term named in the policy, and

if the insured survived that term, the excess shall be paid in cash at the end of such term, etc.

WHITFIELD, C. (after stating the facts as above).

Section 2 of the laws of the state of New York, referred to in the briefs of both counsel, has no application to any but "endowment" policies. The policy in this case is a twenty-year distribution policy, not an endowment policy. The surrender clause of this policy is as follows: "This policy must be surrendered to the company at the end of the said twenty years from the date of issue and the full reserve computed by the American Table of Mortality and four per cent. interest and the surplus as defined, will be paid therefor in cash. If surrendered at the end of any subsequent quinquennial dividend period, the full reserve by the same standard and the surplus as defined will be paid in cash. No cash value will be paid for its surrender at any other time or dates."

Quinquennial dividend periods referred to in this clause are such as occur after the end of twenty years, as clearly shown by the use of the word "subsequent" in the clause. We think the appellant is right in its contention that he could not have sued for the reserve until after the end of the twenty years. The dividend paragraph provides that the policy holder shall be credited with the distributive share of surplus apportioned at the end of twenty years from the date of the policy, expressly adding: "Only twenty-year · distribution policies in force at the end of such term . . . shall share in such distribution of the surplus, and no other distribution of such policies shall be made at any previous time." The clause in reference to the "payment of premiums" expressly provides that, "if this policy shall become void by non-payment of premium, all payments previously made shall be forfeited to the company, except as hereinafter provided." The only other provision therein-

after made is one with respect to "paid-up policies." Construing these various provisions together to get at the true intent of the policy, we think it is clear that, since this policy lapsed at the end of the first five payments, the appellant never became entitled to any credit for a distributive share of surplus, nor to any reserve. His policy was not in force at the end of the twenty-year period, and he did not apply for a paid-up policy within six months after the lapse, as required by the terms of the policy. Not being entitled to a paid-up policy, nor to any reserve on this policy, which was not in force at the time of the suit, which was brought after the end of the twenty-year period, according to our construction of these clauses, which we have set out hereinbefore, we do not thing this suit, which is strictly for the reserve, maintainable.                                      *Reversed*.

PER CURIAM. The above opinion is adopted as the opinion of the court, and for the reasons therein indicated the judgment is reversed, and the suit dismissed.